**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | ) Case No.  2:05-cr-00348-JCM-GWF<br>) |
| vs. | ) **FINDINGS & RECOMMENDATIONS**<br>) |
| MARIE GUADALUPE SANDOVAL, | ) **Re:  Defendant's Motion to Dismiss (#41)**<br>) |
| Defendant. | )<br>) |

This matter is before the Court on Defendant Maria Gaudalupe Sandoval's Motion to Dismiss (#41), filed on October 27, 2008, and the Government's Response to Defendant's Motion to Dismiss (#43), filed on November 10, 2008.  The Court conducted a hearing in this matter on November 24, 2008.

**FACTUAL BACKGROUND**

Defendant Sandoval moves for dismissal of the indictment based on the violation of her speedy trial rights.  Defendant was indicted on September 6, 2005 for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(A)(viii).  The crime charged in the indictment allegedly occurred on August 21, 2005.[1]  Defendant made her initial appearance, was arraigned and entered her not guilty plea to the indictment on September 16, 2005.  Trial was initially set for November 14, 2005.  Defendant was released from custody on a personal recognizance bond subject to Pretrial Services supervision.

---

[1] Defendant Sandoval was initially arrested pursuant to a Criminal Complaint filed on August 23, 2005 in Case No. 2:05-mj-00667-LRL.  She made her initial appearance on the Criminal Complaint on August 31, 2005 at which time a preliminary hearing was set for September 9, 2005.  Ms. Sandoval was released from custody at that time pending the preliminary hearing.  The preliminary hearing was vacated when the indictment was filed in this case.

1    On November 8, 2005, the parties filed a stipulation to continue the jury trial on the grounds that Defendant's counsel needed additional time to investigate and interview witnesses and that Defendant's counsel would need to travel to California to meet and confer with his client. Additionally, the parties stated that Defendant was having complications with her pregnancy. *See Stipulation to Continue* (#8). Pursuant to the parties' stipulation, the Court continued the trial date to March 13, 2006. *Order to Continue* (#9), filed November 22, 2005. On March 7, 2006, the parties filed a second stipulation to continue trial. This stipulation was also based on Defendant's counsel's need for additional time to complete the defense investigation, including witness interviews outside Nevada, that Defendant had recently given birth to a child and that Defendant's counsel would need to travel to California to meet with her. *Stipulation to Continue* (#11). Pursuant to the parties' stipulation, the Court continued the trial date to July 17, 2006. *Order to Continue* (#13), filed March 10, 2006.

After Defendant changed defense counsel to her present attorney, Gary Myers, Esq., the parties filed a third stipulation to continue trial on June 23, 2006. This stipulation was based on Mr. Myers' need for additional time to prepare for trial and review discovery. *Stipulation to Continue* (#18). Pursuant to the parties' stipulation, the Court continued the trial date to September 25, 2006. *Order to Continue* (#19), filed June 29, 2006. On September 19, 2006, the parties filed a fourth stipulation to continue trial. This stipulation was based on Defendant's counsel's representation that he was still in the process of reviewing discovery, researching legal issues and conducting investigation. The stipulation also represented that it was likely Defendant would be retaining new California counsel who would need additional time to prepare. *Stipulation to Continue* (#29). Pursuant to the parties' stipulation, the Court continued the trial date to December 4, 2006. *Order to Continue* (#31), filed September 20, 2006. The parties filed a fifth stipulation to continue trial on November 28, 2006. This stipulation was based on the representation that Defendant would most likely be retaining new counsel, but that her new attorney had recently been ill and had apparently undergone a fairly lengthy hospitalization. *Stipulation to Continue* (#34). Pursuant to the parties' stipulation, the Court continued the trial date to March 12, 2007 and calendar call was set for March 7, 2007. *Order to Continue* (#36), filed November 29, 2006.

On March 6, 2007, the parties filed a sixth stipulation to continue the trial date. This is where confusion began. The sixth stipulation was based on the representation that Defendant had previously

retained a California attorney to represent her. This attorney had recently died, however, and Defendant was now required to decide whether she would seek new representation and how to proceed. The parties' stipulation requested that the March 12, 2007 trial date "be vacated and continued for ninety days, or to a date and time to be set by this Honorable Court." *Stipulation to Continue* (#38). This stipulation was refiled on March 7, 2007. *Stipulation to Continue* (#39). According to the March 7, 2007 docket entry, "attorney refiled stipulation #38 due to clerical error at the direction of chambers." In any event, the Court did not enter an order granting the continuance or setting a new trial date.

According to the Government:

> Following the filing of the sixth stipulation to continue the calendar call and trial dates in the above-entitled matter, Government's counsel observed that the order setting the new trial dates was never entered and that new dates were not set. Government counsel contacted David Oakes, the Courtroom Deputy for the Honorable Judge James Mahan to determine why the order was not signed. Mr. Oakes informed Government counsel that is (sic) was clerical error on the part of the Court, and the case had somehow not been given new trial and calendar call dates. Mr. Oakes advised the parties to re-file the stipulation, and the parties complied. However, yet again, the order was never entered and new dates were not set. Government counsel again contacted Mr. Oakes, who was still unable to explain exactly what happened, but advised the parties to file another stipulation.

*Government's Response to Defendant's Motion to Dismiss* (#43), p. 2.

The foregoing circumstances were clarified at the November 24, 2008 hearing on the Motion to Dismiss. The Government's counsel, Ms. Craig, represented that she communicated with Judge Mahan's courtroom deputy, David Oakes, in August 2007 regarding the fact that new trial and calendar call dates were not set in response to the sixth stipulation to continue trial, Docket Nos. 38, 39. The Government introduced a print-out of an August 29, 2007 email communication from Mr. Oakes to Ms. Craig which states:

> There was a stip that had new dates for the trial which was June 18th that never made it to cmecf.
>
> Since that date has obviously come and gone do you think you can prepare another one so I can set the trial date?

*Government's Exhibit "1."*

According to Ms. Craig, she communicated this information to Mr. Myers, and advised him that a new stipulation needed to be prepared and filed with the Court so that the case could be placed back on

3

1  the Court's trial calendar.  According to Mr. Myers, he spoke to the Government's counsel in
2  approximately September 2007.  He further states:

> To the best of the undersigned's recollection, Ms. Craig [Government's counsel] stated that due to a clerical or system error counsel had not received notice when a new trial date and calendar call were scheduled after the filing of document 39.  In any event, Ms. Craig stated to the effect that the parties needed to prepare another Stipulation along with the Findings of Fact, Conclusions of Law and Order so that this matter could get back on line and a calendar call and trial scheduled.  The undersigned then prepared another trial continuance stipulation and order and to the best of his knowledge those documents were apparently filed.  However, these documents do not appear in the court records and are not on or noted to have been filed on the CM/ECF system.

9  *Defendant's Motion to Dismiss* (#41), p. 4.

10       At the November 24, 2008 hearing, the Government introduced the Stipulation to Continue
11  Calendar Call and Trial (hereinafter "seventh stipulation") prepared by Defendant's counsel in
12  September 2007 and which Government's counsel also signed on or about September 18, 2008.
13  *Government's Exhibit "2."*  Mr. Myers again represented to the Court that he received the signed
14  seventh stipulation from Government's counsel and, to the best of his recollection, filed it with the
15  Court.  The seventh stipulation does not appear in the CM/ECF docket, however, and no new trial date
16  was set.  Whether Mr. Myers is mistaken in his recollection that this stipulation was filed with the Court
17  in September 2007, or whether another clerical error occurred in docketing this stipulation, is simply
18  unknown.

19       Both counsel appear to agree that they next communicated with each other about the status of the
20  trial date in January 2008.  Defendant's counsel states that he communicated with Government's counsel
21  on or about January 10, 2008.  According to Defendant's counsel, Ms. Craig, stated "that there had been
22  a problem with the most recent Stipulation causing it to have not been filed and requesting that the
23  parties enter into another Stipulation so that a trial date could be assigned."  *Defendant's Motion to*
24  *Dismiss* (#41), pp. 4-5.  Defendant's counsel states that he then reviewed the court's electronic records
25  and confirmed that the seventh stipulation did not appear on the docket.  He then "called Ms. Craig the
26  following day informing her that he felt bound, in furthering the best interests of his client, to file the
27  subject Motion [to Dismiss]."  *Id.* p. 5.  Defendant's counsel states, however, that prior to filing the
28  motion to dismiss, he wanted to discuss it fully with Defendant, explain the situation to her and

determine if she wanted the motion to dismiss to be filed. According to Defendant's counsel, Ms. Sandoval informed him on or about October 24, 2008 that she wanted him to file a motion to dismiss the indictment. *Id.*

According to the Government:

> Mr. Myers initially agreed to file another stipulation, but eventually contacted Government counsel and stated that he felt he needed to look into the possibility of filing a motion to dismiss. Mr. Myers stated that he would need to discuss the issue with Defendant. Government counsel informed Mr. Oakes of Mr. Myers' position and again requested that new calendar call and trial dates be issued.
>
> Government counsel then waited to see if either the Court would set a new trial date, or, if defense counsel would file a motion to dismiss. Given the fact that the Defendant resides in California, Government counsel assumed that defense counsel might need time to meet with his client to discuss how to proceed. Needless to say, new dates were not set and defense counsel never filed a new stipulation or a motion to dismiss.

*Government's Response to Defendant's Motion to Dismiss* (#43), p. 2.

Government's counsel also states that in February 2008, she became involved in another trial of a complex case, and therefore does not have the emails she exchanged with Mr. Oakes or a concise recollection of when those communications occurred after her conversation with Mr. Myers in January 2008. Government's counsel also believes that she had one or more conversations with Mr. Myers after January 2008 regarding the status of the trial date. In this respect, Mr. Myers' recollection differs from that of Government's counsel. Mr. Myers states that although he communicated with Government's counsel on other cases or saw her informally between January 2008 and October 2008, he avoided bringing up the status of the trial date in this case because he believed or hoped that the case "had fallen through the cracks" and would go away. He therefore states that there were no discussions with Government's counsel regarding the status of the trial date during this time period. Defendant's counsel also suggests that the Government's attention was called to the status of this case after it became aware in October 2008 that Defendant had been arrested on other charges in California.[2]

---

[2] The Court believes that both attorneys have been truthful and candid regarding their recollections of what transpired. Not surprisingly, recollections may differ, especially when, as here, events beyond the control of either attorney take place. It is also understandable that counsel may have different recollections based on their different perspectives during the events in question.

Defendant has been out of custody since her initial appearance and arraignment and plea on September 16, 2005. In regard to whether Defendant has suffered actual prejudice by the delay in bringing this case to trial, Defendant states:

> Given the passage of over 37 months since Ms. Sandoval's indictment to the present, there is a very real possibility of diminished memory or recollection on the part of witnesses as well as the loss of potentially exculpatory evidence. For example, Mr. Martinez (the passenger in the Sandoval vehicle) probably is no longer in this jurisdiction, and his availability to testify is questionable. Therefore, the delay of over three years since her arrest causes actual, real, severe prejudice to Ms. Sandoval's defense.

*Defendant's Motion to Dismiss* (#41), pp. 7-8.

The Government counters the Defendant's claim of actual prejudice by arguing that Mr. Martinez pled guilty to the charge of unlawful reentry by a deported alien on October 5, 2006 and that he was subsequently sentenced to credit for time served on March 27, 2007 and thereafter deported. Thus, the Government argues that Mr. Martinez would not have been available as a trial witness even if the Court had timely set a trial date in response to the sixth stipulation for a continuance. *Government's Response to Defendant's Motion to Dismiss* (#43), p. 6.

## DISCUSSION

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992), the Court noted that taken literally the speedy trial clause would forbid the government to delay an accused's trial for any reason at all. The literal sweep of the clause has been qualified by the relevance of four inquires set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972): (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay. *Doggett,* 505 U.S. at 651.

As *Doggett* states, whether the delay before trial was uncommonly long involves a double inquiry. In order to trigger a speedy trial analysis, the accused must first allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay. An accused cannot complain that the government has denied him a speedy trial if it has, in fact,

prosecuted his case with customary promptness. If the defendant makes the threshold showing of "presumptively prejudicial" delay, then the court must consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Doggett*, 505 U.S. at 652, *citing Barker*, 407 U.S. at 533-534. A finding of "presumptively prejudicial" delay does not mean that a violation of the right to a speedy trial occurred or that the case should be dismissed. Instead, such a finding means only that the Court must consider the four factors in deciding whether dismissal is warranted under all of the facts and circumstances.

Depending on the nature of the charges, the courts have generally found that post-accusation delay is "presumptively prejudicial" as it approaches one year. *Doggett,* 505 U.S. at 652 n. 1. In *United States v. Beamon*, 992 F.2d 1009,1012-13 (9th Cir. 1993), the Ninth Circuit noted that while some courts have found that an eight month delay is sufficient to cross the "presumptively prejudicial" threshold, delays approaching one year are the generally accepted standard. In *United States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001), the court held that a 14 ½ month delay exceeded the threshold minimum.

In evaluating the four factors, *Barker v. Wingo* states as follows:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker,* 407 U.S. at 533, 92 S.Ct. 2182; *see also United States v. Lam,* 251 F.3d at 856.

The Supreme Court has identified three general types of prejudice that may result from excessive post-indictment delay – oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. Of these forms of prejudice, "the most serious is the impairment of the defense because the ability of the defendant to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654. *Doggett* also noted that *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." Although presumptive prejudice alone cannot carry a Sixth Amendment claim without regard to the other factors, its importance increases with the length of delay.

*Id.,* 505 U.S. at 655-656.

*Doggett* also discussed the interplay and weight to be given the factors in determining whether an accused has been deprived of his right to a speedy trial. Where the government has not been responsible for unreasonable delay, a defendant generally cannot prevail on a Sixth Amendment speedy trial claim regardless of the length of the delay unless he can show specific prejudice to his defense. Conversely, if the government has been guilty of intentional bad faith delay, such delay will be weighed heavily against the government and may present an overwhelming case for dismissal where the delay has been excessive. *Doggett* further states:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it prejudiced him. ...
>
> [] Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

*Doggett,* 505 U.S. at 656-57.

The Court further stated that to warrant relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. *Id.,* 505 U.S. at 657. Under the second and third *Barker* factors, the court is also required to consider whether the defendant was responsible for the delay and whether he asserted his right to a speedy trial in due course. Consideration of these factors may either lessen the weight to be given to the government's delay, or may tip the factor of delay against defendant if he is primarily responsible for it.

In this case, over three years have passed since the indictment was filed and Defendant was arraigned and entered her plea.[3] This time period is more than sufficient to constitute "presumptively

---

[3]There is no issue of pre-indictment delay in this case. The alleged crime was committed on August 21, 2005. The indictment was filed on September 5, 2005 and Defendant made her initial

prejudicial delay" and trigger the balancing analysis under *Barker v. Wingo*. Defendant does not dispute that she is responsible for the delay occasioned by the six stipulations requesting continuances of the trial date. The sixth stipulation, filed on March 6-7, 2007 requested that trial be postponed for ninety days. Thus, the granting of that request would have resulted in a trial date in mid-June 2007. According to Government's Exhibit "1," the Court had intended to set a new trial date for June 18, 2007, but the order was not entered due to clerical error. The Government therefore is not responsible for the initial period of delay from the filing of the indictment through June 18, 2007.

The Court's failure, due to clerical error, to set a new trial following the sixth stipulation for continuance was not the fault of either the Government or the Defendant. Although the Government might be criticized for not recognizing the clerical error earlier, once Government counsel realized that a new trial date had not been set, she communicated with Judge Mahan's courtroom deputy in August 2007 regarding the status of the trial date. The courtroom deputy advised her of the error and requested that the parties submit a new stipulation and order to schedule trial. It appears that Government counsel promptly informed Defendant's counsel about the circumstances and the courtroom deputy's request.

The seventh stipulation that the parties executed in September 2007 requested that "the trial date previously scheduled for June 18, 2007, be continued for thirty days from the date of this Stipulation ..." *Government's Exhibit "2."* By executing this stipulation, Defendant arguably waived the delay that had occurred from the date that the sixth stipulation was filed and from when a trial date should have been set pursuant to that stipulation. Although the Court accepts Defendant's counsel's representation that he believes he electronically filed this stipulation, it does not appear on the CM/ECF docket and the Court cannot determine whether the stipulation was actually filed. In any event, the Government was not at fault in regard to the possible failure to file the seventh stipulation or the docketing error that may have prevented it from coming to the attention of the Court.

By January 2008, both parties' counsel were aware that the seventh stipulation had not been filed or docketed and they again discussed the status of the trial date. It is unclear whether Defendant's counsel indicated any willingness to file another stipulation to have the case set for trial. It is clear that

---

appearance on the indictment on September 16, 2005.

Defendant's counsel advised the Government that he felt bound to file a motion to dismiss, but that he wanted to discuss the matter with Defendant before doing so. It appears that Government's counsel reasonably expected that Defendant's counsel would notify her whether he would be filing a motion to dismiss or, alternatively, would simply file the motion after conferring with his client. Mr. Myers acknowledges that he had no further communication with Government's counsel until late October 2008. Defendant's counsel bears at least some responsibility in not timely filing a motion to dismiss or exercising Defendant's right to demand a speedy trial after January 2008.

On the other hand, once Defendant's counsel did not respond regarding his client's intentions, the Government had the obligation to take action to have the case reset for trial. Although Government's counsel stated that she again communicated with Judge Mahan's courtroom deputy after January 2008 about resetting the case for trial, these communicates are, at best, murky. As Defendant's counsel suggests, at some point it was incumbent upon the Government to file a motion to have the case reset for trial. The Government did not file its motion until October 27, 2008. There is no evidence, however, that the Government intentionally caused delay or acted in bad faith. At most, the Government was guilty of negligence in not moving expeditiously to have the trial date reset once it discovered that the seventh stipulation had not been filed or acted upon by the Court and it became apparent that Defendant was in no rush to file a motion to dismiss.

Post-indictment delay caused by the government's negligence may become so excessive in length that the indictment should be dismissed even absent proof of actual prejudice. In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992), the Supreme Court held that a post-indictment delay of between six and eight years due to government negligence was so excessive as to require dismissal even absent defendant's ability to show that his defense was actually prejudiced. In *United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992), the court held that the indictment should be dismissed where the government was guilty of a five year negligent delay. Conversely, in *United States v. Aguirre*, 994 F.2d 1454, 1457-58 (9th Cir. 1993), the court denied a motion to dismiss where there had been a five year delay. The court found that the government was not negligent and that the defendant had acquiesced in the delay by not timely asserting his right to a speedy trial by making himself available for arraignment.

In *United States v. Beamon*, 992 F.2d 1009 (9th Cir. 1993), the court found that the government

was responsible for delays of 17 and 20 months, respectively, based on its inaction and negligence in locating and arresting defendants following their indictment. The court also found that defendants were not responsible for the delay because they had no knowledge of the indictment. The court nevertheless rejected defendants' argument under *Doggett* that they were not required to show actual prejudice in order to establish the violation of their Sixth Amendment right to speedy trial. In so holding, the court stated:

> Measured by *Shell* and *Doggett*, the delays in this case are not "great." Seventeen and 20 months are only five to eight months longer than the one year benchmark which triggers the speedy trial inquiry under *Barker v. Wingo*. *See Doggett*, 505 U.S. at --- n. 1, 112 S.Ct. at 2691 n. 1. This is not close to the delay of eight times the one year benchmark in *Doggett*, or the delay of five times that point in *Shell*.[4]
>
> Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case -- only a few months longer than the minimum -- were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable. It is clear from *Doggett's* balancing approach that the Court did not intend such a bright line rule. Therefore, we must consider the amount of delay in relation to the particularized prejudice.

*Beamon*, 992 F.2d at 1014.

The court rejected the defendants' argument that their defense was prejudiced because they had a better chance of negotiating a favorable resolution of the case before the time they were arrested. The court held that a weakened plea bargaining position is not the type of prejudice protected by the Sixth Amendment. *Beamon*, 992 F.2d at 1014, *citing United States v. Turner*, 926 F.2d 883, 889 (9th Cir.), *cert. denied*, 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed 2d 73 (1991). In concluding that the indictment should not be dismissed based on a violation of the defendants' Sixth Amendment right to a speedy trial, the court stated:

> On balance, we cannot say that the government's negligence, which caused a delay less than two times as long as the threshold, in light of the presumption of prejudice and the tenuous showing of actual prejudice, entitles Beamon and McMillin to relief. The delay of 17 to 20 months was too long, but not as long as other delays which have been upheld. *See, e.g., United States v. Williams,* 782 F.2d 1462, 1465-66 (9th

---

[3]*Doggett* measured the period of negligent delay by the government to be six years based on when defendant re-entered the United States after the indictment.

> Cir.1985) (39 month delay with no government negligence and minimal showing of prejudice does not violate Sixth Amendment). The government was negligent, but this negligence is weighted less than deliberate delay. *See United States v. Simmons,* 536 F.2d 827, 831 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976). In addition, neither Beamon nor McMillin has shown any actual prejudice. *Id.* (showing of minimal prejudice is insufficient to establish a Sixth Amendment violation); *Sears, Roebuck,* 877 F.2d at 740 (defendant "did not make a showing of prejudice which could justify dismissal on Sixth Amendment grounds"); *United States v. Valentine,* 783 F.2d 1413, 1417-18 (9th Cir.1986) (six month delay with minimal prejudice, *i.e.,* one month incarceration and some destroyed evidence, is insufficient); *see also United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986) ("possibility of prejudice is not sufficient to support" violation of speedy trial rights). Accordingly, while the government's negligence caused a delay long enough to trigger a speedy trial inquiry under *Barker,* the delay of 17 to 20 months is not sufficient to excuse the defendants altogether from any showing of actual prejudice. Their only showing, the possibility of a better plea bargain, is speculative and therefore not persuasive. On these facts, we conclude that Beamon and McMillin are not entitled to relief.

*Beamon*, 992 F.2d at 1014-15.

In this case, Defendant was responsible for the six continuances of the trial date that occurred from the initial trial setting in November 2006 through the continuance of the May 12, 2007 trial date. As set forth above, if the Court had acted upon Defendant's sixth request for a continuance, trial would have been set in June 2007. The Government therefore cannot be charged with responsibility for the initial twenty-one (21) month period of delay. Even if the entire period of delay from June 2007 to the present, approximately 18 months, is attributed to the Government's negligence, under *Beamon,* dismissal of the indictment is not warranted absent proof that the Defendant's ability to defend this case has been actually prejudiced. Furthermore, unlike *Beamon*, the Government is not completely responsible for the delay that occurred since June 2007. Defendant may be responsible for the failure to file the seventh stipulation in September 2007 to have the case reset for trial. In any event, once it became apparent that the seventh stipulation had not been filed, Defendant did not timely exercise her right to demand that the trial date be reset or to move for dismissal of the indictment. Under these circumstances, dismissal is not justified absent evidence of actual prejudice.

As *Doggett* recognizes, it is often difficult for a defendant to show actual prejudice due to lengthy delay of the trial. Nevertheless, Defendant has not presented sufficient evidence to show that her defense has actually been prejudiced. In support of her motion, Defendant states that due to the delay,

there is a very real possibility of diminished memory or recollection on the part of witnesses as well as the loss of potentially exculpatory evidence. As an example, Defendant states that Mr. Martinez, the passenger in the Defendant's vehicle at the time of her arrest, is probably no longer in this jurisdiction and his availability to testify is questionable. The Government argues, however, that Mr. Martinez pled guilty to the charge of unlawful reentry by a deported alien on October 5, 2006 and that he was sentenced to credit for time served on March 27, 2007 and was subsequently deported. *Government's Response to Defendant's Motion to Dismiss* (#43), p. 6. Although the date of Mr. Martinez's actual deportation is unknown, it appears that he would probably not have been available to testify at trial in June 2007 if the case had been reset for trial at that time pursuant to the sixth stipulation for a trial continuance. In any event, Defendant has not presented any evidence that Mr. Martinez's trial testimony would have been favorable to her defense. Nor has Defendant pointed to the loss of any other evidence favorable to her defense. Her contention of actual prejudice is therefore speculative. *See United States v. Williams*, 782 F.2d 1462, 1466 (9th Cir. 1986).

## CONCLUSION

Based on the foregoing, the Court finds that the length of delay attributable to Government negligence is not sufficiently long to require dismissal of the indictment in the absence of proof that Defendant's defense has actually been prejudiced. Defendant has not shown that her defense has actually been prejudiced by the delay. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss (#41) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*

1  *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

2  DATED this 26th day of November, 2008.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge